UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ADAM NAERT, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:19-cv-02339-SNLJ |
| | ) |
| GEICO CASUALTY INSURANCE COMPANY, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes to the Court on defendant Geico Casualty Insurance Company's motion for summary judgment (ECF #23). For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

This case involves claims by Adam Naert, the insured, against Geico, the insurer, for underinsured motorist ("UIM") coverage related to vehicular accident that occurred on February 3, 2019. At the time of the accident, Naert was operating a 2006 Suzuki motorcycle. There is no dispute that the motorcycle was not listed on the relevant insurance policy's declarations page. Pointing to the policy's owned-vehicle exclusion, Geico says Naert's claim must fail because UIM coverage does not apply to an owned vehicle that is not listed or described in the policy's declarations. The relevant UIM coverage and exclusion provisions read:

**Underinsured Motorist Coverage**
**Missouri**
…
**DEFINITIONS**
…
**3.** *Occupying* means in, upon, entering into or alighting from …
…
**LOSSES WE PAY**
We will also pay damages the *insured* is legally entitled to recover for *bodily injury* caused by an accident and arising out of the ownership, maintenance or use of an *underinsured motor vehicle*.
…
**EXCLUSIONS**
…
**5.** *Bodily Injury* to an *insured* while *occupying* or through being struck by any motor vehicle owned by the *insured* or a *relative* that is not described in the Declarations, or which is described in the Declarations but Underinsured Motorist Coverage is not carried, is not covered.

Naert's sole contention against Geico's motion is that he did not, in fact, own the motorcycle at the time of the accident. Thus, he argues, the owned-auto exclusion cannot apply in this case notwithstanding the fact that the motorcycle does not appear in the policy's declarations.

**II. STANDARD OF REVIEW**

Summary Judgment involves the "threshold inquiry of determining whether there is a need for trial." *Walls v. Petrohawk Properties, LP.*, 812 F.3d 621, 624 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986)). In other words, summary judgment is appropriately granted if, in viewing the record in a light most favorable to the nonmoving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating both the absence of a genuine issue of material

fact and his or her entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the nonmoving party must then set forth, by affidavit or other rebuttal evidence, specific facts showing that a genuine issue of material fact actually exists. *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005); FED. R. CIV. P. 56(e). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-248). Thus, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion to dismiss." *Id*. Moreover, even when a dispute is genuine—such that a jury could reasonably favor either side—it must also be the case that the disputed facts are material in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

The owned-vehicle exclusion works to bar UIM coverage for bodily injuries sustained while the insured is occupying a vehicle owned by him or her, but not included in the policy's declaration page. *See, e.g., Bush v. Shelter Mut. Ins. Co.*, 412 S.w.3d 336, 340 (Mo. App. W.D. 2013). Thus, the exclusion hinges in large part on what it means to

3

"own" the vehicle involved in a claimed accident. When the definition is left undefined in the policy—as has occurred here—the Missouri Supreme Court applies a "meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc. 2013). Looking to the dictionary definition, *Manner* concluded the term "owner" involves, as a practical matter, "establishing either title … or the power to voluntarily destroy, encumber, sell, or otherwise dispose of the property." *Id*. at 63. Similarly, in the content of Chapter 301—Registration and Licensing of Motor Vehicles—the legislature has made clear that an "owner" means anyone who "holds legal title to a vehicle." § 310.010(44), RSMo.

There is no dispute that, at the time of the accident, Naert possessed the Suzuki—certainly so, he was driving it. The dispute lies, instead, on whether Naert held legal title to the motorcycle. Naert says no, pointing out that, while he paid for and took possession of it prior to the accident (as shown in the supplied certificate of title), he did not have it "titled in [his] name." In other words, he was assigned the title from the relevant seller, but never followed up to have it registered in his name.

Missouri has a statute that lays out precisely what must occur for the sale and registration of a motor vehicle. First, "in the event of a sale [] of a motor vehicle," the holder of the certificate of ownership must "endorse on the same an assignment thereof." § 301.210.1, RSMo. Second, "[t]he buyer shall then present such certificate, assigned as foresaid, to the director of revenue" for the "registration of such motor vehicle," who will issue "a new certificate of ownership [] to the buyer." § 301.210.2, RSMo. Additional

4

requirements follow in Section 301.210.3 that are not relevant here—applicable to interstate sales and dismantled vehicles.

Naert's theory, and Geico's counterargument, hinges on the second requirement—title registration. While Naert points out how he has yet to comply with registration requirements, Geico says registration is a technicality and not absolutely required to establish ownership. According to Geico, "all a seller needs to do is endorse the title over to the buyer" and, upon that act, ownership has successfully transferred.

This Court agrees with Geico.[1] In the case of a used motor vehicle—what is undisputedly at issue here—it has long been held that "the fact of ownership is created by the delivery of a properly assigned certificate of title." *Allstate Ins. Co. v. Northwestern Nat. Ins. Co. of Milwaukee, Wis.*, 581 S.W.2d 596, 602 (Mo. App. S.D. 1979). "Registration is one step beyond proper assignment of title and an individual may become the owner of a [used] motor vehicle although he has not yet become registered as the owner." *Id.*; *accord Schultz v. Murphy*, 596 S.W.2d 51, 53 (Mo. App. E.D. 1980). As *Allstate* points out, this rule derives from Chapter 301's precise definition of "owner," which is predicated on the person who, through contractual assignment, "holds the legal title of a vehicle" notwithstanding forthcoming registration efforts. *Allstate Ins. Co.*, 581

---

[1] The Court would place one, small caveat on Geico's statement that "all a seller needs to do is endorse the title over to the buyer." Missouri law draws a distinction between *new* vehicles and *used* vehicles. This case involves the latter, and Geico's statement accurately applies in that context. But, as for new cars, it is not true that a sales transaction need always involve the assignment and transfer of title. This is because Section 301.200 provides a limited "non-title exemption for dealer sales of a new car." *Executive Jet Management & Pilot Serv., Inc. v. Scott*, 629 S.W.2d 598, 612-613 (Mo. App. W.D. 1981); *see also Faygal v. Shelter Ins. Co.*, 689 S.W.2d 724, 727 (Mo. App. E.D. 1985).

S.W.2d at 602 (citing Section 301.010, RSMo.); *see also Glenn*, 423 S.W.3d at 774-775 (discussing how title assignment follows basic contract law principles of mutual assent and consideration).[2]

The Missouri Court of Appeals recently reaffirmed *Allstate*'s applicability in a case contextually similar to the issues confronted here. In *Hong Lu v. Automobile Club Inter-Insurance Exchange*, an insurance policy granted insured status to the named insured and "other person[s] [while] using your insured auto." 510 S.W.3d 348, 354 (Mo. App. E.D. 2016). The term "your insured auto" included "autos shown in the declarations page, **while owned by you**." *Id.* (emphasis in original). The insured had sold the relevant vehicle to his son on November 20, 2014. *Id.* at 351. Title was assigned to the son on that day. *Id.* at 355. Six days later, on November 26, 2014, the son was involved in the claimed car accident. *Id.* at 351. The vehicle was not registered in the son's name until December 8, 2014. *Id.* at n.4. The court concluded the insured no longer owned the vehicle at the time of the accident—despite the lack of son's registration—and affirmed the trial court's judgment in favor of the insurer. *Id.* at 355. Citing *Allstate*, the court explained that "ownership of [the] vehicle transfer[red] in Missouri upon delivery of [the]

---

[2] That is not to downplay the importance of registration, particularly in contemplation of a subsequent sale by the assignee. But, when title has been properly and contractually assigned, the lack of subsequent registration is not enough—alone—to rob the assignee of an immediate ownership interest. *Compare Schultz*, 596 S.W.2d at 53 (ownership vested in assignee of vehicle the moment they took "delivery of a properly assigned certificate of title"); *with Shivers v. Carr*, 219 S.W.3d 301, 303-304 (Mo. App. S.D. 2007) (assignee of an vehicle with an Illinois certificate of ownership did not validly transfer vehicle to third person where assignee failed to have the vehicle first registered in Missouri under his name); *see also Glenn*, 423 S.W.2d at 774-775.

properly assigned certificate of title." *Id*. at 355 (citing *Allstate Ins. Co*., 581 S.W.2d at 602)).

*Allstate* and *Hong Lu* resolve this case. Naert did, in fact, own the vehicle prior to the relevant accident, and there is no dispute that it was not included in the policy's declarations. Therefore, the owned-vehicle exclusion applies to bar his UIM coverage claims.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendant Geico Casualty Insurance Company's motion for summary judgment (ECF #23) is **GRANTED**. Judgment to follow.

So ordered this 5th day of May 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE